UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

_____

Jon Ethridge,

                        Plaintiff,                                        Case No. 13-14713

vs.                                                                        Hon: Nancy Edmunds

The Bank of New York Mellon,

                        Defendant.

_____


**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AND FOURTH COMPLAINTS [24], GRANTING DEFENDANT'S MOTION TO DISMISS FIFTH COMPLAINT [38],[1] DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF [27], AND DISMISSING THIS ACTION WITH ORDERS TO THE CLERK OF COURT TO STRIKE ANY ACTION FILED BY PLAINTIFF WITHOUT CERTIFICATION AS PROVIDED FOR IN THIS ORDER**

        This matter comes before the Court on Defendant The Bank of New York Mellon,

f/k/a The Bank of New York, as Successor Trustee to JP Morgan Chase Bank, N.A., as

Trustee for the Certificateholders of CWABS Master Trust, Revolving Home Equity Loan

Asset Backed Notes, Series 2004-J's motion to dismiss Plaintiff Jon Ethridge's third,

_____

[1] Defendant has filed a motion to dismiss this fifth complaint. Plaintiff has not yet responded. The Court finds, though, that a response would not aid in its determination of the matter. And so the Court issues this opinion and order.

fourth, and fifth complaints related to a residential mortgage on his property.[2]  Plaintiff has also filed a motion for injunctive relief.   Defendant argues that Plaintiff's complaints 1) are barred by *res judicata* and 2) fail to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.   Because the Court agrees 1) that *res judicata* bars the complaints since Plaintiff could have sued Defendant in previous complaints, and, as to the fourth and fifth complains 2) even if Plaintiff could bring the conversion and legal malpractice claims, he would still lose because he fails to allege a viable legal claim and fails to allege facts that could withstand a 12(b)(6) motion to dismiss, the Court GRANTS Defendant's motions.   Because Plaintiff is not entitled to relief, the Court DENIES Plaintiff's motion for injunctive relief.

## I.    Facts

### A.  Plaintiff purchased the property

On June 27, 1996, Plaintiff acquired the premises known as 17801 Rowe Street, Detroit Michigan,[3] through a quit-claim deed.  (Nov. 12, 2013 Compl. ¶6.)  To secure the loan, Plaintiff executed a mortgage on the property.  (*Id.*, ¶8.)  On August 30, 2004, Plaintiff entered into a mortgage agreement with Mortgage Electronic Registration Systems Inc. ("MERS") for eighty-five-thousand-dollars.  (*Id.*, ¶7.)  The mortgage designates MERS as "Mortgagee" and "Nominee" for "Lender" America's Wholesale and its successors and assigns.  (Report and Recommendation to Grant Def.'s Mot. to

---

[2] The Court has consolidated case numbers 14-11383 and the recently filed 14-12624 with this case, 13-14713.

[3] The premises are legally described as LOT 2271 BRENDON 7 SELSON'S LASALLE SUBDIVISION NO. 7, AS RECORDED IN LIBER 60 PAGE 30, Ward 21 Item #36075. (Nov. 12, 2013 Compl. ¶6.)

Dismiss and Den. as Moot Def.'s Mot. to Dismiss at 2.)  On September 14, 2004, the property's mortgage was recorded with the Wayne County Register of Deeds.  (Br. in Supp. of Def.'s Mot. to Dismiss 3d Compl., Ex. F, Mortg., at 1.)  MERS assigned the mortgage to Defendant, as trustee, which was recorded in the Register of Deeds on May 18, 2011.  (Br. in Supp. of Def.'s Mot. to Dismiss 3d Compl., Ex. G, Assignment of Mortg., at 1.)

### B.  Plaintiff fails to pay his mortgage

Plaintiff made payments on his mortgage for more than seven years, but on February 2, 2011, Plaintiff stopped paying.  (Assignment of Mortg. at 1.)  On May 18, 2011, MERS assigned the mortgage to Defendant.  (Mar. 3, 2013 Compl. ¶7.)    In 2012, Plaintiff defaulted on his obligations under the note and mortgage.  (*Id.*, ¶8.)  Due to the default, Defendant began foreclosure proceedings on the property.  (*Id.*)  Plaintiff filed suit seeking to invalidate the mortgage, avoid repayment obligations, and recover unspecified damages.  (Jan. 4, 2012 Compl. at 7.)

### C.  Defendant began foreclosure proceedings

As a result of Plaintiff's default, Defendant instituted foreclosure proceedings. For four weeks between June 28, 2013 and July 19, 2013, the notice of foreclosure sale was published in the Detroit Legal News.  (Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., Ex. H, Affidavit of Publication attached to Sheriff's Deed.)  On March 5, 2013, Defendant sent Plaintiff a letter informing him of his right to a pre-foreclosure modification meeting, pursuant to Michigan Compiled Laws § 600.3205.  (Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., Ex. H, Notice attached to the Sheriff's Deed.)

3

Plaintiff did not request a meeting.  (*Id.*)   On July 1, 2013, notice of the foreclosure sale was also posted on the property.  (Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., Ex. H, Evidence of Sale attached to Sheriff's Deed.)  On October 10, 2013, Defendant purchased the property at the Sheriff's sale.  (Mar. 3, 2014 Compl., Ex. B, Sheriff's Deed on Mortgage Sale.)   Defendant purchased the property for $101,199.23 and received a Sheriff's Deed on Mortgage Sale.  (*Id.*)  Plaintiff failed to redeem the property before the redemption period expired.  (*Id.*)

### D.  Procedural History

The Court is familiar with the facts of this case for the Court has already adjudicated a case that Plaintiff and his wife filed in 2012.

On January 4, 2012, Plaintiff and his wife Renee Ethridge began challenging the foreclosure and filed the first complaint in Wayne County Circuit Court, against Countrywide Home Loans, Inc., MERS, Merscorp Holdings, Inc., and Bank of America. (Jan. 4, 2012 Compl. at 1.)  That complaint alleges that:  (1) Defendants' transfer of the loan violated the Servicer Performance Agreement and various federal statutes, including:  the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Fair Debt Collection Practices Act, and the Fair Credit Reporting Act; and (2) Defendants engaged in fraudulent conduct by relying on "bogus instruments" and failing to disclose information to Plaintiffs.  (*Id.*, ¶¶8, 10, 13, 15.)  With the first complaint, Plaintiff sought to have his property returned to him; it was a complaint to quiet title.   With that complaint, Plaintiff challenged Defendants' ability to foreclose on his property.   On January 9, 2012, Defendants removed the action to this Court.  Defendants then filed a motion to dismiss for failure to state a claim.  (Nov. 12, 2013 Compl. ¶¶19, 20.)   On

January 18, 2012, Plaintiff filed a *lis pendens* with the Wayne County Register of Deeds regarding the property.[4]  (*Id.*, ¶22.)  On April 19, 2012, Plaintiff filed an amended complaint.  The amended complaint included the following claims:

(1)   Breach of contract
(2)   Violation of contract also validation
(3)   Violation of the servicer performance agreement
(4)   Violation under the Uniform Commercial Code & 201(39)
(5)   Failure of validation is a violation of REMIC LAW
(6)   Unjust enrichment

(First Am. Compl. at 3-7.)

The magistrate judge instructed Defendants to respond to the amended complaint.  On June 1, 2012, Defendants filed a second motion to dismiss.  That same day, Plaintiffs filed a motion for default judgment.  (Feb. 7, 2014 Order from U.S. Court of Appeals – 6th Cir. at 2.)  The magistrate judge issued a report recommending that the Court deny Plaintiffs' motion for default judgment because:  (a) Plaintiffs failed to comply with Eastern District of Michigan Local Rule 7.1(a) and Federal Rule of Civil Procedure 55(a) before seeking a default judgment; and (b) Defendants had filed timely responses to the complaint and amended complaint.  (*Id.*)  After substantially interpreting Plaintiffs' conclusory and vague amended complaint, the magistrate judge recommended granting Defendants' motion to dismiss for failure to state a claim.  (Order Accepting & Adopting Magistrate Judge's Report and Recommendation at 1.)  On November 2, 2012, the Court accepted and adopted the magistrate judge's recommendation and dismissed the case with prejudice and denied as moot Defendant's previous motion to dismiss.  (*Id.*)  The Court adjudicated the case and held that Plaintiff no longer had interest in the

---

[4] A *lis pendens* "gives notice to others of the claim alleged in the lawsuit and that a purchaser of the property may take the property subject to the outcome of the lawsuit."  *United States v. Parrett*, 503 F.2d 422, 432 (6th Cir. 2008).

property and that Plaintiff was barred from challenging the foreclosure process in the future since Plaintiff failed to redeem the property.  (Nov. 2, 2012 J. at 1.)

More than eight months after the entry of judgment, Plaintiffs filed a motion for relief from judgment because the Court's order dismissing the case had referred to Plaintiffs as "Defendants," although the Court had issued an amended order to correct that typographical error on December 14, 2012.  (Report and Recommendation to Grant Def.'s Mot. to Dismiss at 2.)  Plaintiffs also sought relief from the judgment because they claimed the Court had not acted on their motion for default judgment, although in fact the Court denied that motion on July 25, 2013.  (*Id.*)  On August 5, 2013, the Court denied the motion for relief from judgment as moot because the case was closed.  (*Id.*)  On August 13, 2013, Plaintiffs filed a notice of appeal to the Sixth Circuit from that order.  (*Id.*)  The Sixth Circuit affirmed the dismissal.  (*Id.*)

On July 10, 2013, Plaintiff filed a second complaint similar to the first action in state court against the same Defendants.  (July 10, 2013 Compl. at 1.)  On August 1, 2013, Defendants removed the case to federal court.  (Report & Recommendation to Grant Def.'s Mot. to Dismiss at 3.)  The second complaint brought an action concerning the same property and made generally the same claims as the first action; Plaintiff demanded quiet title.  The second complaint yet again challenged the foreclosure of their mortgage, challenged the validity of the mortgage assignment to Defendant, and alleged that "Plaintiff is the current lawful owner" of the property.  (July 10, 2013 Compl. ¶¶3, 8.)  The complaint recited many abstract legal conclusions without connecting them to any factual allegations about Defendants.  (Report & Recommendation to Grant Def.'s Mot. to Dismiss at 3.)   On November 18, 2013, the magistrate judge

recommended granting Defendants' motion to dismiss and that the case be dismissed because *res judicata* barred Plaintiffs' claims.  (*Id.* at 8.)  On December 3, 2013, the Court accepted and adopted the magistrate judge's findings and conclusions and held that Plaintiff failed to redeem the property, thereby dismissing the case with prejudice again.  (Dec. 3, 2013 J. at 1.)  The practical implication of this judgment by the Court is that Plaintiff could no longer challenge the invalidity of the mortgage assignment and that the Court ruled that there was a proper chain of title.  Plaintiff filed a timely appeal to that judgment, but the appeal was recently dismissed because Plaintiff failed to pay the filing fee.  (Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. at 2.)  The consolidated first two cases determined that Plaintiff had no interest and no right to interest in the property, that Plaintiff could no longer challenge the foreclosure, and that Plaintiff could no longer challenge the invalidity of the mortgage assignment.

After the first two complaints were dismissed, Plaintiff began to challenge the foreclosure process.  On November 12, 2013, Plaintiff filed his third complaint against Defendant[5], The Bank of New York Mellon, regarding an abuse of the judicial process and alleging the conversion claim.  (Nov. 12, 2013 Compl. at 6.)  Plaintiff seeks damages for actions taken during the foreclosure process and the alleged wrongful conversion of his property by Defendant.  Defendant was assigned the mortgage on May 18, 2011 which is when Defendant received an interest in the property.  (*Id.*, ¶17.) The conversion claim brought forth by Plaintiff is based on this assignment, which has already been adjudicated by the Court in the previous two complaints; the assignment occurred in 2011, which transpired even before the first complaint.   In his third

---

[5] Judge, "Defendant" in the singular will always refer to The Bank of New York Mellon.

complaint, Plaintiff alleges that Defendant cannot receive a Sheriff's Deed on Mortgage Sale since Plaintiff had filed a *lis pendens* on the property and litigation was still pending.  Plaintiff asserts that Defendant's encumbrance through wrongful conversion of property has deprived Plaintiff of his legal interest of the property.  As a result, Plaintiff argues that he suffered "trauma of deep emotional pains, together with anxiety, worry, [and] sleepless nights due to the stress of the uncertainty of summary proceedings being commenced by the Defendant, which caused depression, lasting injuries, loss of enjoyment of life and aggravation of preexisting conditions."  (*Id.*, ¶34.)  On January 13, 2014, Defendant filed a motion to dismiss and asserted that the property at issue was sold at the foreclosure sale.  (Def.'s Mot. to Dismiss Pl.'s Compl. at 1.)  That motion to dismiss is currently pending before this Court.

On March 3, 2014, Plaintiff filed a fourth complaint in state court against Defendant.  (Mar. 3, 2014 Compl. at 1.)  This fourth complaint, much like the first three lawsuits, alleges a professional legal malpractice claim.  Plaintiff again seeks to challenge the foreclosure process, which was adjudicated in the first two complaints, and alleges that Defendant failed to render professional services with regard to the foreclosure sale.  (*Id.*, ¶27.)  Plaintiff alleges that Defendant and his representatives/attorney did not correctly follow the steps and timeline for foreclosure of a property that a "prudent reputable member of the profession" would have done.  (*Id.*, ¶9.)  Plaintiff sets forth the defects he alleges occurred by Defendant during the foreclosure process, which includes: 1) Defendant never sent Plaintiff a notice that the terms of the mortgage had been violated; 2) Defendant never sent a letter to Plaintiff notifying him of his right to work with Defendant's representative/attorney for loan

repayment or modification options to avoid foreclosure; 3) Defendant never sent Plaintiff a notice informing Plaintiff of his option to seek assistance from a housing counselor; 4) Defendant never attempted to resolve the mortgage default with Plaintiff; 5) Defendant's representative or attorney never recorded a formal notice of foreclosure at the local courthouse; 6) Defendant's representative or attorney never scheduled the date for the sheriff's sale; 7) Defendant nor his representative published details of the debt in the legal newspaper; 8) Defendant did not pay the sum of $101,199.23 for the property and the amount is a fraudulent amount on the Sheriff's Deed on Mortgage Sale; and 9) no representative for Defendant was physically present at the county courthouse on October 10, 2013.  (*Id.*, ¶¶14-23.)  The third and fourth complaints were consolidated into one case, which is at issue here.

On July 3, 2014, Defendant removed another case that Plaintiff filed in state court, on June 3, 2014 (the fifth complaint).  (14-12624, dkt. 1.)  Plaintiff styled that complaint as first amended complaint pursuant to Michigan Law.[6]   (*Id.*)  He also noted that the two prior cases that this Court has pending on that state-filed amended complaint.  (*Id.*)  With the fifth complaint, Plaintiff alleges two counts: fraud upon the court and improper foreclosure.  (5th Compl. at 4, 7.)  The essence of the two counts is, again, that Defendant improperly foreclosed on the property and, in doing so, committed fraud upon the Court.  The Court consolidated the fifth complaint with the third and fourth complaints in this action, 13-14713.

---

[6] Regardless of whether the Court views the fifth complaint as its own complaint or as a motion to amend the third and fourth complaints, the Court finds that the claims are barred by res judicata.

Defendant requests that the Court enter an order striking Plaintiff's complaint for failure to seek leave to file, and dismissing Plaintiff's claims for failure to state a claim upon which relief can be granted, pursuant to Federal Rule Civil Procedure 12(b)(6). Defendant also seeks an order barring Plaintiff from filing future filings without first seeking leave to do so, or requiring a bond.  (Def.'s Mot. to Dismiss 3d Compl. at 1-2; Def.'s Mot. to Dismiss 5th Compl.)

## II.    Analysis

With the third and fourth complaints, Plaintiff asserts two claims, conversion and professional legal malpractice.  Plaintiff fails on both claims.  The Court finds that Plaintiff's claim of conversion fails because *res judicata* bars the claim because Plaintiff could have brought these two claims against Defendant in a previous complaint.  Even if the Court were to find that the doctrine of *res judicata* did not bar Plaintiff's claims, Plaintiff still fails to state a viable legal claim for conversion since the Michigan statutory conversion statute does not apply to real property.  The Court finds the professional legal malpractice claim also fails because Plaintiff's allegations are conclusory and contain no factual support.

The fifth complaint, comprised of the fraud on the court and improper foreclosure claims, is also barred by res judicata.  In its motion to dismiss the fifth complaint, Defendant raises other arguments as to why dismissal is appropriate.  The Court has reviewed those arguments, and agrees with them as well.  But the Court relies on res judicata to dispose of this fifth complaint.

### A.  *Res judicata* bars Plaintiff's claims

Defendant argues that Plaintiff's claims should be barred by *res judicata*.  Plaintiff argues that this third complaint is based on new evidence which could not have been obtained beforehand and that he was not given a "full and fair opportunity to be heard on this new issue."  (Pl.'s Reply to Def.'s Mot. to Dismiss 3d Compl. at 4.)[7]

*Res judicata* applies when three elements are present:  "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999).  When the evidence or essential facts are the same as the prior action, *res judicata* bars a subsequent action between the parties. *Id.*  "Michigan courts have broadly applied the doctrine of *res judicata*.  They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

*Res judicata* is composed of two types of preclusion:  claim preclusion and issue preclusion.   Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).   Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue

---

[7] Plaintiff argues that Defendant "vaguely pled" *res judicata* without specifying whether they meant claim preclusion or issue preclusion, but Defendant's brief unequivocally argues that Plaintiff's claims are barred.  (Pl.'s Reply to Def.'s Mot. to Dismiss Pl.'s 3d Compl. at 4.)

11

recurs in the context of a different claim.  *Id.*  Here, claim preclusion bars Plaintiff's complaint.

Defendant argues that Plaintiff satisfies *res judicata's* first element, action decided on the merits.  Here, the first and second actions were decided on the merits because the Court granted the Defendants' motion to dismiss for failure to state a claim, and further leave to amend was denied.  (Report & Recommendation to Grant Def.'s Mot. to Dismiss at 6.)  *See Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir. 1988) ("a dismissal for failure to state a claim is a judgment on the merits, and does preclude a second action on the same claim.")  *Res judicata* bars Plaintiff's four pending claims claims because the Court has already ruled on the issues in the first two complaints which also regarded the foreclosure of the property.  In the first complaint, Plaintiff sought to have his property returned to him and challenged the foreclosure.  The Court adjudicated the case and held that Plaintiff no longer had interest in the Property and that Plaintiff could no longer challenge the foreclosure process, and the case was dismissed with prejudice.  (Nov. 2, 2012 J. at 1.)  The second complaint brought an action concerning the same property and made generally the same claims as the first action; Plaintiff again challenged the foreclosure and sought quiet title.  This second complaint was also dismissed with prejudice and the Court held that Plaintiff failed to redeem the property and, therefore, no longer had an interest in the property and that Plaintiff could no longer challenge the assignment of the mortgage to Defendant.  (Dec. 3, 2013 J. at 1.)

Here, Plaintiff is seeking damages for actions taken by Defendant during the foreclosure process and is also seeking injunctive relief.  The Supreme Court of

Michigan has stated that "[r]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Adair v. State*, 680 N.W.2d 386, 397 (Mich. 2004). The essential facts in the third and fourth complaints are identical to the facts of the first two complaints which were decided on the merits. The Court finds that it previously decided Plaintiff's claims satisfying *res judicata's* first element.

As to the second element, the Court finds that these previous actions bar Plaintiff's claims of conversion and professional legal malpractice because Plaintiff could have brought these claims in the first two actions if he had acted with reasonable prudence. "Res judicata bars every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* Plaintiff argues that the matter contested in this fourth action could not have been resolved in the first action because "the Complaint is based on new evidence which could not have been obtained beforehand as these events transpired several months after the original and previous complaint." (Pl.'s Reply to Def.'s Mot. to Dismiss Pl.'s 3d Compl. at 4.)

Defendant points out, though, that the allegations were raised, or could have been raised in the second action filed in 2013. Plaintiff learned of the foreclosure sale on November 18, 2013, which is the same day that the magistrate judge issued her report and recommendation to dismiss the second complaint. Plaintiff, four days later, even filed objections to the Report and Recommendation. The Court did not issue the judgment on the second matter until December 3, 2013. Within those fourteen days, Plaintiff could have raised the two arguments, and since the case was still pending, that was the time to do it. (Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s 3d Compl. at 11-12.)

This was the appropriate time to raise the two arguments because Plaintiff alleges that the legal malpractice claim and conversion claim arose out of the foreclosure process. Since the two claims arose out of the foreclosure process, it demonstrates that the conversion and professional legal malpractice claims were not based on "new evidence" that could not have been obtained beforehand, as Plaintiff argues, since the claims arose out of the foreclosure sale, which occurred prior to this consolidated case; the foreclosure sale occurred on October 10, 2013, which was months before the judgment on the second complaint.  Plaintiff, therefore, could have amended that complaint to bring this claim prior to the entry of judgment on that matter.  Plaintiff failed to do so. *See* Rep. & Recommendation to Grant Def.'s Mot. to Dismiss at 7 ("[T]hese allegations could have been included in the prior action . . ..")  Where a claim "arose from the same transaction, or series of transactions," the fact that the claimant asserts alternative theories of recovery "does not allow [him] to avoid claim preclusion, when those other theories could have been asserted" in the prior action.  *Raw v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)) (internal quotation marks omitted).  The Court finds that the second element of *res judicata* is satisfied.

*Res judicata's* third element is satisfied as well since the parties in this action are the same as and/or privies of the parties of the previous actions.  Here, Plaintiff in this action was the plaintiff in the prior actions.  Defendant in this action is also in privity with the named defendants in the first two actions.  Defendant is in privity because, on May 18, 2011, MERS, who was the original assignor or holder of the mortgage, and who was one of the named defendants in the first two actions, transferred the mortgage to

14

Defendant, who then became the assignee. (Assignment of Mortg. at 1.) Defendant, therefore, is in privity with the named defendants in the first two actions because it is the assignee. *See Coventry Parkhomes Condo. Ass'n v. Federal Nat'l Mortg. Ass'n*, 827 N.W.2d 379, 382 (Mich. Ct. App. 2013) ("It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor.") "When a mortgage is assigned, the assignee, for all beneficial purposes claimed under it by him, becomes a party to the mortgage, and stands in the place of the mortgagee . . .." *Id.* (quoting *Nichols v. Lee*, 10 Mich. 526, 528 (1862)). Although Defendant was not in the two actions that were appealed, its predecessor was named in those two actions and Plaintiff could have raised claims against Defendant in the second action.

Plaintiff's claims, therefore, are precluded by the doctrine of *res judicata*.[8]

### B.  Plaintiff fails to state a conversion or a legal malpractice claim

Even if the Court were to find that *res judicata* did not bar Plaintiff's claims, Plaintiff still fails to state a claim for relief because:  1) Plaintiff fails to state a viable conversion claim, and 2) Plaintiff fails to allege facts that would withstand a 12(b)(6) motion to dismiss with regard to the legal malpractice claim.

### 1.  Plaintiff fails to state a viable conversion claim because Michigan's statutory conversion statute does not apply to real property

---

[8] While the Court focuses its discussion on the third and fourth complaints, the res judicata analysis applies with equal force to the fifth complaint. The fifth complaint cannot escape a res judicata argument, for the claims Plaintiff attempts to raise are all based on facts that, again, took place during the foreclosure process.

Plaintiff requests that the Court find Defendant liable for conversion and grant injunctive relief.  Plaintiff argues that he has adequately stated a claim for relief for Defendant's professional malpractice, which resulted in wrongful conversion of the property through foreclosure.  According to Plaintiff, the conversion is alleged to have occurred when Defendant sold the property through a Sheriff's Deed on Mortgage Sale without first obtaining a judgment in the replevin action, since Plaintiff had filed a *lis pendens* with the Wayne County Register of Deeds regarding the property on January 18, 2012 for the purpose of reserving rights pending litigation.  (Nov. 12, 2013 Compl. ¶31.)  As a result, Plaintiff argues that Defendant's wrongful conversion of the property was both "premature and unlawful."  (*Id.*, ¶34.)  Plaintiff demands either the return of the property or the ability to purchase the property through a land contract.  (Pl.'s Reply to Def.'s Mot. to Dismiss Pl.'s Compl. at 7.)

Plaintiff cites *Brunswick Corp. v. J&P Inc.*, 296 F. Supp. 544 (W.D. Okla. 1969), for support.  Upon further review, however, *Brunswick* does not support Plaintiff's conversion claim.  In *Brunswick*, the defendants sought relief of property repossessed by them under the terms of a conditional sales contract by reason of an alleged conversion by the plaintiff.  *Id.* at 545.  According to the appeal, the parties had executed a conditional sales contract for bowling equipment and defendant defaulted on the installment note.  Plaintiff brought suit and filed an affidavit for replevin.  *Brunswick Corp. v. J&P Inc.*, 424 F.2d 100, 102 (10th Cir. 1970).  After gaining possession of the equipment, plaintiff held an auction and was the highest bidder.  Defendants counterclaimed, alleging that the sale before judgment converted the property under the Oklahoma doctrine of in custodia legis.  *Id.*  The conversion is alleged to have occurred

16

when the plaintiff sold the property without first obtaining a judgment in the replevin action. The district court dismissed Defendants' claim and granted summary judgment for plaintiff. *Id.* The district court held that "conditional vendors who retook possession of property in replevin and sold it without obtaining judgment in replevin action were not liable to conditional vendee under doctrine of conversion." *Brunswick*, 296 F. Supp. 2d at 545. The defendants appealed and the appellate court affirmed, finding that the doctrine did not apply because appellant failed to cite any case in which the doctrine applied to a conditional vendor who had replevined and sold the goods prior to judgment. *Brunswick*, 424 F.2d at 104. "Since appellants admit that Brunswick complied with the procedural requisites of the Uniform Commercial Code in conducting the default sale, the trial judge was correct in denying appellants' counterclaim." *Id.* at 105. *Brunswick* does not apply here because it applies Oklahoma law and the facts are not analogous to the facts in this case regarding the foreclosure of real property.

Here, even with the filing of the *lis pendens*, the foreclosure was not "premature and unlawful" since Plaintiff did not redeem the property before the redemption period, which resulted in Plaintiff losing any interest in the property, as well as legal ability to challenge the validity of the foreclosure. Plaintiff cannot reserve rights to the property by filing a *lis pendens*. *See Berry v. Myslinski*, No. 305564, 2012 WL 6178157, at *3 (Mich. Ct. App. Dec. 11, 2012) ("Filing a lis pendens would not have substituted for redeeming the property."); *See also Stern v. Marjieh*, No. 295487, 2011 WL 1140129, at *3 (Mich. Ct. App. Mar. 29, 2011) ("Here, the trial court granted the motion to cancel the notice of lis pendens because it thought that plaintiffs could not prevail on their quiet title claim, effectively determining that there was no benefit to plaintiffs.")

17

Plaintiff also cannot succeed on his conversion claim because Michigan's conversion statute only applies to personal property, and not real property. Michigan Compiled Law § 600.2919a, the conversion statute, prohibits knowingly "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." The statute provides for the recovery of three times the amount of actual damages and attorneys' fees for the wrongful conversion of property. *Id.* The statute, though, does not apply to real property. *See Dardini v. Chase*, No. 12559, 2013 WL 1747825, at *4 (E.D. Mich. Apr. 23, 2013) (Cox, J.) ("Under Michigan law, a claim for conversion only applies to personal property, not real property.") (citations omitted).

Plaintiff's conversion claim fails as a matter of law.

### 2. Plaintiff has not pleaded sufficient facts supporting his legal malpractice claim to survive a 12(b)(6) motion to dismiss

Plaintiff alleges a professional legal malpractice claim with regard to the foreclosure sale process. Defendant argues that Plaintiff does not meet the required four elements of a legal malpractice claim and that Plaintiff still fails to identify a single cognizable cause of action. The Court determines that Plaintiff fails to allege facts that could withstand a 12(b)(6) motion to dismiss.

### a. 12(b)(6) motion to dismiss standard

In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266, 292 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint as inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim for relief that is plausible on its face."  *Id.* at 678 (internal quotation marks and citation omitted).

### b.  Plaintiff fails to allege sufficient facts, which taken as true, would support a legal malpractice claim

Plaintiff fails to state a professional legal malpractice claim.  In Michigan, a legal malpractice claim includes four elements:  "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Pontiac Sch. Dist. v. Miller, Canfield, Paddock & Stone*, 563 N.W.2d 693, 698 (Mich. Ct. App. 1995) (quoting *Coleman v.* Gurwin, 503 N.W.2d 435, 437 (1993)).  A plaintiff has the burden of proving all the elements of the claim to prevail.  *Id.*

Plaintiff has not asserted allegations that even suggest an attorney-client relationship.  Plaintiff's complaint merely states the conclusion that Defendant committed professional legal malpractice.  He fails to allege that Defendant, or Defendant's counsel, owed him a duty:

> The actions by which [Defendant] purchased the property failed to render professional services and did not exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession and it resulted in the loss of Plaintiff's property.

(March 3, 2014 Compl. ¶27.)   Plaintiffs do not allege an express relationship. To determine if an implied relationship has been formed, "the focus is on the putative client's subjective belief that he is consulting a lawyer in his professional capacity."  *MJK Family LLC v. Corporate Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) (citing *Dalrymple v. National Bank & Trust Co. of Traverse City*, 615

2:13-cv-14713-NGE-RSW   Doc # 39   Filed 08/18/14   Pg 21 of 25   Pg ID 813

F.Supp. 979, 982 (W.D. Mich. 1985)).  Generally, "there is no individual attorney-client privilege between a corporation's attorney and an individual . . . unless there is a clear showing that he consulted the corporate counsel in his individual capacity."  *Id.* at 594. Plaintiff does not allege any facts that there existed an attorney-client relationship.  For this reason, Plaintiff has not put forth allegations that could establish the first element.

Plaintiff additionally cannot satisfy the second or third elements since he cannot allege that Defendant breached any duty or acted negligently under the Michigan Foreclosure by Advertisement Statute.  Plaintiff does not contest the foreclosure and has not brought forth any evidence that Defendant breached any duty or acted negligently with regard to the foreclosure.  Plaintiff additionally has no legal interest in the property since that issue has already been adjudicated in the previous actions. Defendant has alleged that it complied with the statute because it gave presumptive notice that Defendant will foreclose on the property.  On March 5, 2013, Defendant sent Plaintiff a letter informing him of his right to a pre-foreclosure modification meeting, pursuant to Michigan Compiled Laws § 600.3205, yet Plaintiff failed to request a meeting.  (Br. in Supp. of Def's Mot to Dismiss Pl.'s Compl. at 4.)  For four weeks between June 28, 2013 and July 19, 2013, the notice of foreclosure sale was published in the Detroit Legal News.  (*Id.* at 3.)  On July 1, 2013, notice of the foreclosure sale was also posted on the property.  (*Id.*)  Here, Plaintiff provides allegations in support of his claim yet does not provide any facts to suggest that Defendant engaged in fraud during the foreclosure period.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not

'show[n]' . . . 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  Plaintiff, therefore, fails to satisfy the third element.

Plaintiff lastly fails to satisfy the fourth element because he cannot prove damages since he has not and cannot establish that he was prejudiced by the alleged improper foreclosure process.

Plaintiff's fourth complaint should be dismissed because no relevant facts are pleaded that could establish the requisite elements to support the professional malpractice cause of action.  As a result, this complaint does not survive a 12(b)(6) motion to dismiss.

## C.   The Court bars Plaintiff from future filings in this Court related to this loan or property without first seeking leave and dismisses the complaints and this case

Defendant has requested the Court to grant an order barring Plaintiff from future filings in this court that are related to this loan or property.  (Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. at 17.)  Courts in this district have adopted a five-factor test for determining whether to restrict a litigant's future access to the courts:

> (1) The litigants history of litigation and in particular whether it entails vexatious, harassing or duplicative lawsuits;
> (2) The litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing;
> (3) Whether the litigant is represented by counsel;
> (4) Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
> (5) Whether other sanctions would be adequate to protect the courts and the other parties.  Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Tidik v. Ritsema*, 938 F. Supp. 416, 427 (E.D. Mich. 1996).

Here, Plaintiff has a history of bringing forth claims in state and federal courts regarding his loan and property.  Defendant argues that this fact is indicative of litigation that is vexatious and duplicative; his first two cases were dismissed, and there is an absence of any objective good faith expectation that Plaintiff will prevail in this present action.  (Br. in Supp. of Def.'s Mot. to Dismiss 3d. Compl. at 16.)  As discussed in the analysis above, Plaintiff, without the representation of counsel has brought forth duplicative lawsuits regarding the same property.  By filing a second complaint alleging virtually identical claims, Plaintiff has exhibited a persistent defiance of this Court's prior rulings.  Plaintiff's present complaints additionally have no chance of success.  The complaints are duplicative, vexatious, has caused to incur needless expenses to the parties, and has imposed an unnecessary burden on the courts.

The Court enjoins Plaintiff from filing future civil actions without first obtaining leave of the Court.  In *Ortman v. Thomas,* 99 F.3d 807, 811 (6th Cir. 1996), the Sixth Circuit held, "[w]e do not believe a person can be absolutely foreclosed from initiating an action in a court of the United States, though it is permissible to require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed."  *See also Siller v. Haas*, 21 F. App'x 270, 271 (6th Cir. 2001) (ruling plaintiff is "enjoined from filing any civil lawsuits alleging or asserting factual or legal claims based upon or arising out of the legal or factual claims alleged in this action or any of the actions underlying it without first obtaining written certification from a United States Magistrate Judge that the claim or claims asserted are not frivolous and that the suit is not brought for any improper purpose.")

23

The Court grants Defendant's request to enjoin Plaintiff from filing further lawsuits unless Plaintiff can make a showing, before allowing the claim to be filed, that the tendered lawsuit is not frivolous or vexatious.  The Court orders "that the [Clerk of the Court] return, unfiled, any suits or appeals improperly filed without certification."  *Id.*

### D.  The Court denies Plaintiff's motion for injunctive relief

Plaintiff has filed a motion for injunctive relief.  (Dkt. 27.)  Plaintiff requests that the Court grant injunctive relief for the reasons set forth in his complaint.  (Pl.'s Mot. for Inj. Relief at 2.)  "Injunctive relief is an extraordinary remedy that courts normally grant only when:  (1) justice requires it; (2) there is no adequate remedy at law; and (3) there exists a real and imminent danger of irreparable injury."  *Head v. Phillips Camper Sales & Rental, Inc.*, 539 N.W.2d 595, 603 (Mich. Ct. App. 1999).  Injunctive relief requires the Court to consider:

> (1) whether the movant has show[n] a strong likelihood of success on the merits;
>
> (2) whether the movant will suffer irreparable harm if the injunction is not issued;
>
> (3) whether the issuance of the injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by issuing the injunction.

*Cronin v. Bank of Am.,* No. 13249, 2013 WL 2626739, at *6 (E.D. Mich. June 11, 2013) (citing *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

Given that Plaintiff's complaint does not entitle him to relief, and that the Court has issued opinions and orders denying his claims, the Court finds that he is not entitled

24

to injunctive relief and DENIES Plaintiff's motion for injunctive relief as Plaintiff has no likelihood of success on the merits.

## III.     Conclusion

Because the Court finds, 1) the complaints are barred by *res judicata* since Plaintiff could have brought these four claims in the first complaint, and, as to the third and fourth complaints 2) Plaintiff fails to allege a viable conversion claim and fails to allege facts that would withstand a 12(b)(6) motion to dismiss with regard to the professional legal malpractice claim, the Court GRANTS Defendant's motions to dismiss Plaintiff's complaints  with prejudice.  In addition, the Court DENIES Plaintiff's motion for injunctive relief, and GRANTS Defendant's request to enjoin Plaintiff from filing further lawsuits regarding this loan or property.

So ordered.

s/Nancy G. Edmunds

Nancy G. Edmunds

United States District Judge

Dated:  August 18, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel

Case Manager